SAMUEL S. PERRY *v*. UNITED STATES

No. 7614.—Invoice dated Guadalajara, Jali., Mexico, August 31, 1944.
  Certified September 1, 1944.
  Entered at El Paso, Tex., September 22, 1944.
  Entry No. 1045.

(Decided August 16, 1948)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.

*Charles J. Miville*, Acting Head, Customs Division, Assistant Attorney General's Office (*Harold L. Grossman, Howard L. Harawitz*, and *William J. Vitale*, special attorneys), for the defendant.

CLINE, Judge: This is an appeal for reappraisement of earthenware articles imported from Mexico on September 20, 1944. They were entered at the invoiced unit prices plus packing and stamp tax and appraised at the same values plus 25 per centum.

The case was originally tried before Judge Ekwall and submitted to him for decision. He found that a price list attached to defendant's collective exhibit 1 was in the Spanish language and not translated so that the court was unable to compare the prices with the invoice prices and also that it was not clear whether the importer had bought the merchandise from the manufacturers or from Mr. Garcia. The case was therefore restored to the docket "in order that the record may be clarified."

It appears from the record herein that this merchandise is manufactured in homes and small shops located in the vicinity of Tlaquepaque, Mexico. According to the invoice the articles involved were obtained from several different manufacturers and were shipped by Garcia y Ruvalcaba to Samuel S. Perry, the importer herein. Mr. Perry testified and the report of Treasury Representative W. W. Fraser (defendant's collective exhibit 1) shows that Garcia y Ruvalcaba acted as purchasing agents for Mr. Perry and were paid a 15 per centum commission for its services.

Mr. Perry also testified that he had been in Mexico in 1943 up to September of that year and in November and December of 1944 and January and half of February 1945; that he was familiar with the class of goods covered by the invoices; that he had seen the places of manufacture located around Tlaquepaque; that he was familiar with the prices at which these pottery manufacturers were selling their products during the latter part of 1944; that it was a free market to anyone who wanted to buy whether for export or for domestic pur-

poses at the same prices; that the prices were the same as those shown upon the invoices herein. He further testified:

Q. And, were prices quoted at that time either by the manufacturer or Jesus Garcia?—A. It was quoted by the manufacturer to him and I was there and I understand a little Spanish and it was translated.

Q. And, were those the same prices that you had been paying for such goods?—A. That's right.

Mr. Perry also stated that Garcia y Ruvalcaba purchased and sold merchandise for its own account and offered the same at two or three sets of prices to different concerns. The report of Treasury Representative Fraser states, however, that except in sales to one favored customer, the records of Garcia y Ruvalcaba indicate that the selling price was substantially the same to all customers and that these prices were cost plus a markup of 20 to 30 per centum, depending upon how fragile the article was.

Joseph L. Kleinman, the appraiser at El Paso (the port of entry), testified that he had appraised this merchandise on the basis of export value; that "The unit prices plus the 25 per cent represents the freely offered price of the man who sold the merchandise."

At the rehearing, Mr. Kleinman was recalled and stated that the price which he returned as dutiable value represented the freely offered price of Garcia y Ruvalcaba who sold to others than the plaintiff at the unit prices plus 25 per centum.

A translation of the price list attached to defendant's collective exhibit 1 was then received in evidence.

Plaintiff contends that the invoice prices represent the correct dutiable values; that they were the prices at which anyone could buy from the manufacturers; that the appraised values represent the prices at which the merchandise was offered for sale by Garcia y Ruvalcaba; and that the manufacturers' sales prices establish dutiable value rather than the price at which jobbers resell the merchandise. Defendant contends that the plaintiff has failed to prove that the manufacturers freely offered their merchandise to all purchasers; and that, therefore, the appraised values based on Garcia y Ruvalcaba's selling price are the dutiable export values.

In reappraisement cases, plaintiff has the burden not only of proving that the appraised values are erroneous but of establishing the correct dutiable values. *Harry Garbey* v. *United States*, 24 C. C. P. A. 48, T. D. 48332; *Sears, Roebuck & Co.* v. *United States*, 31 C. C. P. A. 36, C. A. D. 246. In order to do so, plaintiff must overcome the presumption of correctness attaching to the appraiser's valuation. *Transatlantic Shipping Co., Inc.* v. *United States*, 28 C. C. P. A. 19, C. A. D. 118.

In the instant case, therefore, plaintiff must establish that the individual manufacturers of this merchandise freely offered it for sale to

all purchasers in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States at the invoice prices. The only evidence of this is contained in the testimony of Mr. Perry to the effect that there was a free open market price to anyone who wanted to buy whether for export or for home consumption. His information was apparently obtained on his visits to the manufacturers with Jesus Garcia. He testified that prices were quoted to Garcia in his presence and that he understood a little Spanish and it was translated. Whether or not the prices were intended to be quoted to Perry is left in doubt. There is no other evidence in the record of any sales or offers to sell by the manufacturers to anyone either for home consumption or for exportation to the United States. For all the record shows, Garcia y Ruvalcaba may have been the sole purchasers from these manufacturers. Mr. Perry's statement that there was a free market is a conclusion of the witness which is entitled to little weight when the unsubstantial basis upon which that statement was made is taken into account. *Jenkins Brothers* v. *United States*, 25 C. C. P. A. 90, T. D. 49093. It has been held that a statement of a *manufacturer* that he is willing to sell to anyone at the price charged the importer is no proof of market value in the absence of evidence of sales or offers to sell at the prices noted on the invoices. *Transatlantic Shipping Co., Inc.* v. *United States, supra; Golding Bros. Co., Inc.* v. *United States*, 6 Cust. Ct. 964, Reap. Dec. 5272. A similar unsupported statement by an *importer* is likewise insufficient proof of market value.

I hold, therefore, that the plaintiff has failed to establish that the manufacturers freely offered the merchandise to all purchasers at the invoice prices and has thus failed to overcome the presumption of correctness attaching to the appraiser's valuation.

On the record herein I find the export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, to be the proper basis for the determination of the value of the merchandise here involved, and that such values are the appraised values.

Judgment will be rendered accordingly.